NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0912n.06

No. 12-2084

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 24, 2013
DEBORAH S. HUNT, Clerk

HELEN ADAMS,                              )
                                         )
    **Plaintiff-Appellant,**              )       ON APPEAL FROM THE
                                         )       UNITED STATES DISTRICT
v.                                       )       COURT FOR THE EASTERN
                                         )       DISTRICT OF MICHIGAN
GENERAL MOTORS COMPANY,                   )
                                         )
    **Defendant-Appellee.**               )       **O P I N I O N**
                                         )
_____  )

**Before:  MOORE, GIBBONS, and SUTTON, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  Defendant-Appellee General Motors
Company ("GM") employed Plaintiff-Appellant Helen Adams for a few years in the 1970s.  On the
job, Adams suffered an injury that prevented her from continuing to work.  Years later, GM paid
Adams pension benefits for twenty-one months until it concluded that those payments were made
in error and canceled them.  Adams sought to have the benefits reinstated and eventually filed this
action in federal court under the Employee Retirement Income Security Act of 1974 ("ERISA").
The district court concluded that GM did not act arbitrarily or capriciously in denying Adams the
pension benefits, and it awarded GM judgment on the administrative record.  We agree that GM's
interpretation of the pension plan was reasonable, and thus, we **AFFIRM**.

## I.  BACKGROUND

Adams started working for GM in 1973, and she continued doing so intermittently until suffering a hand injury on March 31, 1976.  A week after this injury, GM discharged her, and Adams has never returned to work as a result of her disability.  From the date of her discharge, GM has paid Adams worker's compensation benefits.  It voluntarily paid them until January 1977; since then, it has paid disability benefits as the result of an administrative proceeding.  During that proceeding, the administrative law judge ("ALJ") found Adams to be an "employee" under Michigan worker's compensation statutes.

Whether Adams was an employee matters because she seeks pension benefits under the Hourly-Rate Employees Pension Plan ("HRP").  The HRP was part of the Collective Bargaining Agreement ("CBA") between GM and the United Automobile Workers ("UAW") that was in effect at the time of Adams's discharge.  Under this plan, only "employees,"[1] as defined by the CBA, are eligible for benefits.  Appellee App. at 25 (HRP Art. II, § 1), 27 (HRP Art. X, § 1(b)(1)).  Explicitly excluded from this definition are "temporary employees," *id.* at 27 (HRP Art. X, § 1(b)(1)), who are employees whose names do not appear on the "seniority list," *id.* at 22 (CBA § 56).

GM has maintained that Adams was only a temporary employee because her name was never placed on the seniority list.[2]  Despite this stance, GM paid Adams pension benefits for twenty-one

---

[1]The HRP and the CBA use the term "employes."  For the sake of clarity, we will adopt the modern spelling—"employee."

[2]At various points in the record, Adams acknowledges GM's claim.  *See, e.g.*, Appellant App. at 1 (Benefits Claim) ("I was [d]ischarged [a]s [a] [t]empoary [e]mployee [i]n 1976.");  Appellee App. at 15 (Appeal from Benefits Decision) ("We were told that I was discharged as a

months beginning in October 2007 that totaled $46,087.23. Eventually, GM caught its mistake and shut off the payments to Adams. She petitioned to have them reinstated. GM denied these requests, finding that Adams was ineligible for pension benefits because she "never acquired seniority" and was "never on an approved leave of absence." Appellant App. at 17 (Final Benefits Decision). Furthermore, because GM determined that this pension payment was in error and that the HRP's administrators were bound by ERISA, GM was required to demand that Adams return the money.

After exhausting her administrative remedies, Adams filed the present suit in district court. The parties stipulated that the court would review GM's administrative decision under the "Arbitrary and Capricious" standard. R. 11 (Joint Statement at 1) (Page ID #36). And both parties filed motions for judgment on the administrative record. The court referred the matter to a magistrate judge, who subsequently issued a Report and Recommendation ("R&R") in favor of GM. In particular, the magistrate judge found that GM's interpretation of the CBA and its decision that Adams was a temporary employee were not arbitrary or capricious. Adams raised several objections to this R&R, but the district court accepted the R&R without revisions. Adams filed a Motion for Reconsideration under Fed. R. Civ. P. 60(b), which the district court denied. This appeal followed.

_____

Temporary, unsatisfactory employee in 1976."). GM argues that these statements qualify as admissions and that Adams should be bound by them. We do not agree. The Benefits Claim is a two-page form with seven handwritten lines that detail the "nature of the claim." Appellant App. at 1. It appears to have been prepared without counsel's assistance and merely parrots the language of GM's 2009 Ineligibility Letter. *See* Appellee App. at 13. GM also points to an appeal that Adams filed on UAW stationery, which contained the signature of a "Benefit Representative." *Id.* at 15. This letter merely restates GM's claim without accepting it. Thus, it does not qualify as an admission.

## II.  STANDARD OF REVIEW

We review de novo the district court's grant of judgment on the administrative record.  *Glenn v. MetLife*, 461 F.3d 660, 665 (6th Cir. 2006), *aff'd*, *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).  In most situations, we also review de novo a plan administrator's decision to deny benefits, but when a plan gives its administrator discretion to determine eligibility, we decide whether the denial was arbitrary or capricious.  *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010).  All parties agree that the CBA and the HRP gave GM such discretion, and thus, we will uphold the administrator's decision (and the district court's ruling) "'if it [was] the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'"  *Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 552 (6th Cir. 2008) (quoting *Glenn*, 461 F.3d at 666).  This standard may be deferential, but "our review is no mere formality."  *Glenn*, 461 F.3d at 666.

## III.  MERITS

ERISA requires that "[e]very employee benefit plan . . . be established and maintained pursuant to a written instrument."  29 U.S.C. § 1102(a)(1).  Per this command, the CBA and HRP outline the benefits and requirements under GM's plan.  The HRP states that "[a]ny employee [who meets certain age and service-time requirements] shall be entitled to receive a pension."  Appellee App. at 25 (HRP Art. II, § 1).  It defines an "employee" as "[a]ny person regularly employed in the United States by [GM]," *id.* at 27 (HRP Art. X, § 1(a)), but it explicitly carves out "temporary employees" from that definition, *id.* (HRP Art. X, § 1(b)(1)).  Furthermore, the CBA states that all

"[e]mployees shall be regarded as temporary employees until their names have been placed on the seniority list." *Id.* at 22 (CBA § 56).

GM—the plan administrator—interpreted these provisions to require, as a threshold matter, that a claimant's name appear on the seniority list to be eligible for benefits. In this case, it found Adams's name absent from the list and, as a result, determined that she was ineligible to receive a pension under the plan. For us to reverse the district court under the arbitrary or capricious standard, we must decide that GM's interpretation and application of the CBA and HRP were unreasonable. *Johnson v. Eaton Corp.*, 970 F.2d 1569, 1574 (6th Cir. 1992). This we cannot do. The text of the plan supports GM's reading, and Adams has offered no evidence that her name actually appeared on the seniority list, making her ineligible for pension benefits. Her counterarguments are unpersuasive.

First, Adams claims that §§ 107 and 108 of the CBA show that she "is entitled to credited service towards her pension." Appellant Br. at 9. Section 108 states that sick leave related to work injuries begins "automatically and seniority . . . accumulate[s] for the full period of legal temporary disability." Appellant App. at 11. It continues: "[t]emporary employees disabled by compensable injury or legal occupational disease shall be given credit for the period of such disability *toward acquiring seniority*." *Id.* (emphasis added). Section 107 also relates to sick leave, but it specifically commands that "in no case shall a temporary employee's name be placed on the seniority list while away from work on sick leave." *Id*. Adams asserts that these provisions create an ambiguity in the CBA and HRP and, by implication, that GM's resolution of it was unreasonable.

A careful reading of these sections, however, adds weight to GM's interpretation rather than calling it into question. Section 108 discusses the accumulation of seniority and credit "toward acquiring seniority"—implying that some other event triggers seniority. Unlike § 56 of the CBA, § 108 says nothing about temporary employees becoming full employees while on leave for work-related injuries. In fact, § 107 appears to forbid such a status conversion. It is unclear how these provisions render the CBA and HRP ambiguous, but even if confusion exists, we give plan administrators "great leeway in interpreting ambiguous terms." *Moos v. Square D Co.*, 72 F.3d 39, 42 (6th Cir. 1995). In this case, GM's reading of these provisions is not unreasonable. Requiring an employee to have her name placed on the seniority list to be eligible for a pension fits with the language of the CBA and the HRP; the two provisions that Adams cites do not raise a conflict with GM's interpretation.

Second, Adams argues that principles of collateral estoppel and res judicata bar GM's determination of Adams's ineligibility because a state administrative agency adjudicated Adams an employee in the 1970s. Specifically, Adams claims that GM should be estopped from holding her ineligible because GM never denied that Adams was an employee in proceedings before the Michigan Workers' Compensation Appeal Board. This argument fails for two reasons. One, Adams never made this argument in the district court, and thus, she has forfeited it. *See Dealer Computer Servs., Inc. v. Dub Herring Ford*, 623 F.3d 348, 357 (6th Cir. 2010). Two, even if we considered this argument, Adams would not succeed. Michigan's worker's compensation statute defines "employee" broadly, *see* Mich. Comp. Laws § 418.161, but it does not contain a distinction between

full and temporary employees like the HRP does. Under the HRP, "employee" carries a different meaning. More importantly, the HRP and other ERISA-covered pension plans are governed by their own terms. 29 U.S.C. § 1102(a)(1). GM's decision to follow the HRP's definition of employee was not irrational; it was required.

Third, Adams insists that *Haynor v. General Motors Co.*, 606 F. Supp. 2d 675 (E.D. Mich. 2009), governs the outcome of this case. She is wrong for multiple reasons. To start, we are bound only by decisions of the United States Supreme Court and prior published decisions of this court. *See Darrah v. City of Oak Park*, 255 F.3d 301, 310 (6th Cir. 2001). Moreover, in *Haynor*, the parties disputed whether the plaintiff had accumulated enough time to qualify for pension benefits. *See* 606 F. Supp. 2d at 677–78. Here, the issue is not whether Adams met the service-time requirements; it is whether she passed the threshold test of becoming a full employee by having her name put on the seniority list. The terms of the CBA explicitly state that an employee cannot have her name added to the list while on sick leave, Appellant App. at 11 (CBA § 107), and Adams has offered no evidence showing that she was on the list prior to her injury. She carries the overall burden of proving that she is eligible for a pension. *Rose v. Hartford Fin. Servs. Group, Inc.*, 268 F. App'x 444, 452 (6th Cir. 2008). Adams has not cleared this bar, and *Haynor* cannot save her.

Fourth, Adams contends that upholding the denial of her pension benefits allows GM to "punish" her and "produces an unjust result." Appellant Br. at 12. Adams has put forth no specific evidence that GM is attempting to "punish" her. And while it is unfortunate that GM mistakenly paid Adams benefits and then demanded the return of its payments, plan administrators must serve

as fiduciaries to all of the plan's beneficiaries. *Conkright v. Frommert*, 559 U.S. 506, 520 (2010). Thus, if the administrators mistakenly disperse the plan's limited funds, they have a duty to seek their return so that the proper beneficiaries may receive their pensions. *See* 29 U.S.C. § 1132(a)(3)(B); *Gilchrest v. Unum Life Ins. Co. of Am.*, 255 F. App'x 38, 44 (6th Cir. 2007). The mistaken payments may not serve as the sole basis for establishing eligibility for a pension in this case. Doing so would compound GM's mistakes and cause further harm to the HRP's eligible beneficiaries.

## IV. CONCLUSION

In summary, Adams has failed to demonstrate that GM's interpretations of the CBA and HRP were arbitrary or capricious. Therefore, we must **AFFIRM** the district court's grant of judgment to GM.